DECISION
This matter is before the Court for decision with respect to the motion of defendant, Maguire Group, Architects, Engineers, Planners, Ltd. (Maguire) to vacate default judgments. The motion implicates the provisions of Rules of Civil Procedure, Rule 60(b)(1) and 60(b)(6).
 PROCEDURAL HISTORY
A brief review of the procedural history of this case will serve as the backdrop to the pertinent facts found by this Court following hearings hereon. Thereafter, the Court will apply the law as it finds it to be to arrive at the Court's decision on Maguire's motion.
The captioned suit was brought in 1996 by a number of individual plaintiffs who allege that they were injured as a result of exposure to certain chemicals while working on a pipeline project in East Providence, Rhode Island. Maguire, it was alleged in the complaint, together with the other named defendants, was liable to plaintiffs by reason of their joint and/or respective sole roles in the pipeline project.
Defendant Maguire timely answered plaintiffs' complaint in July 1996.[1] That answer was filed by attorney John Coffey. In March 1997, a discovery request (request for production) was mailed to Maguire's attorney, Coffey, by plaintiffs' counsel. In June 1997, an order entered granting plaintiffs' motion to compel because of the failure by defendant to produce as requested.
In December 1997, because it still had not furnished the requested and now ordered materials, a conditional default entered against defendant. Finally, in June 1998, default entered against defendant Maguire. It should be noted that each of the procedural steps referred to above reflect that appropriate and timely notice thereof was given to attorney Coffee. No objection was filed with respect to any of the aforementioned orders — further, the evidence before the Court reflects not only that the required motions and orders were sent to defendant's counsel, but also that plaintiffs' counsel sent a number of letters asking for (indeed, almost begging for) compliance by defendant, all of course to no avail.
On July 6, 8 and 28 in 1999, a hearing was held by this Court with respect to an assessment of damages. Finally, on or about July 30, 1999, judgment in the aggregate amount of $458,533.69 entered as against Maguire (a memorandum to the hearing justice suggesting judgment figures was sent to attorney Coffey by plaintiffs' counsel in mid July).
Execution issued on September 7, 1999 and was served on defendant Maguire on September 9, 1999. Finally, on October 15, 1999 the instant motion to vacate was filed on behalf of Maguire through new counsel, attorney Dorothy S. Davison. Ultimately, the matter was heard by this Court on February 24 and on March 21, 22 and 24, 2000. Thereafter, counsel for the respective parties were afforded the opportunity to supply post hearing memoranda in addition to the pre hearing memoranda that each had submitted. Counsel filed such memoranda and counsel for plaintiffs also filed a reply to defendant's post hearing memoranda.
 FACTS
The evidence before the Court established that John G. Coffey, Jr. was admitted to the Rhode Island Bar in 1968 and began the practice of law following his admission to the bar in 1969. For a number of years he had practiced with a midsize Providence law firm. After about 10 years he established a partnership with another Rhode Island attorney, and by the mid 1990's he was practicing as a sole practitioner. Since about 1979, he had represented defendant Maguire, including a number of its affiliates and subsidiaries. Essentially, he served as general counsel to that enterprise and indeed served as a corporate officer of certain of the affiliated corporate entities. Much of Coffey's legal practice involved highly sophisticated international, corporate and regulatory work, as well as general supervision of litigation matters. While Coffey was not an employee of defendant during the times pertinent to this matter, he was paid a substantial monthly retainer; maintained his office on defendant's premises and to the extent that he required support services had use of defendant's personnel for such purposes. While Coffey did handle some matters not related to his involvement with defendant, most of his time was consumed with Maguire matters covered by the retainer arrangement or matters which evolved out of his relationship with Maguire for which he was separately compensated. As a result of his role as general counsel, Coffey was in constant contact with senior officers of Maguire. Indeed his office at defendants Foxboro facility was next to a senior member of defendant's management team, that is to say, the chief financial officer. Prior to moving to the Foxboro, Massachusetts facility, Coffey's office was located on defendants premises in Providence, Rhode Island.
The evidence discloses that defendant Maguire owns a "captive liability" insurance carrier set up by Coffey and that he participated in quarterly litigation reviews with respect to outstanding claims attended by senior defendant corporate officers as well as with representatives of that captive insurer. The record also discloses that during the pendency of this litigation, this case was referred to at those quarterly reviews and that with respect to this case, the so called Bailey matter, Coffey reported that "nothing was going on." There is no evidence before the Court that suggests that any detailed discussion of the Bailey case ever occurred, save only for the cryptic "under control" or "nothing going on" reference above.
The record and evidence discloses that Coffey's daily routine from the time of the inception of the instant litigation through September of 1999, and for some extended period of time predating this litigation, was for Coffey to arrive at the office early in the morning (oft times as early as 6:30 a.m.) and to work from the time of his arrival to eleven or twelve o'clock at noon, at which point he would generally leave the office — go or come to Providence for lunch, during lunch he would routinely have up to four glasses of wine, thereafter, he would return to his home in Newport, sometimes stopping at taverns or restaurants where he would consume up to six more glasses of wine before returning to his house, perhaps further drinking at home before retiring for the evening at between 8:30 and 9:00 p.m. Sometimes retiring for the night was in the form of passing out from the consumption of alcohol. There is no evidence before the Court that Coffey at any time consumed alcohol while at work. The Court finds that following the service of the execution herein on defendants Providence office, Coffey received a faxed copy in Foxboro and left defendant's premises. The Court further finds that Coffey was not sure where he went, although he thinks he went to Newport where he continued his drinking. Ultimately, sometime thereafter, he agreed to meet with defendant's president. That meeting took place at a hotel in Mansfield, Massachusetts and included not only defendant's president, but also a Massachusetts litigation attorney, who from time to time, had been engaged through Coffey to handle litigation matters for defendant in the Commonwealth. This meeting lasted about four hours. A focus of the meeting was defendant's suggestion that Coffey needed to seek treatment. It appears that as a result of this meeting, Coffey, the next day, was brought to Butler Hospital in Providence and was admitted as a patient in the dependency program where he remained for a two-week period. The evidence further discloses that in the period 1997 through 1999, Coffey, who had been drinking in the manner herein before described for ten to twenty years prior to September of 1999, also had had certain DEPCO related problems as well as problems with respect to a property settlement agreement with his now divorced wife. The evidence also shows that Coffey had experienced certain financial problems related to various other matters. Turning to the specific facts relative to the case at bar, the Court finds that Coffey, as indicated above, timely filed an answer to the original complaint in the case; the evidence further discloses that Coffey received the March 1997 request for production. Ultimately, defendant's executive vice president of operations, Victor Calabretta, was made aware of the request for production and advised Coffey that the requested documentation did not exist. The Court further finds that Coffey did not respond to the request for production and that thereafter he received various motions and orders as specified and/or referred to at the outset of this decision. The Court also finds that Coffey received the various letters from plaintiffs' counsel, hereinbefore characterized by this Court as either urging or begging compliance. Further, the Court finds that Coffey received the memorandum addressed to this Court in mid July 1999 suggesting judgment figures. The testimony discloses that Coffey ignored, and in some cases even failed to open, the mail which carried the various letters and documents herein before referred to. During this same time frame, Coffey was reporting at the aforementioned quarterly litigation reviews that "nothing was going on" with the Bailey case. There is no evidence that suggests anything more than a cursory reference to this case at those quarterly sessions. Such other facts as may be necessary to the discussion of Rule 60(b) and to its application, will be set forth in the analysis which follows.
Defendant here seeks relief from the judgment entered herein on or about July 30 predicated on the provisions of Rule 60(b)(1) and/or Rule 60(b)(6). Rule 60(b) in pertinent part reads as follows:
 "On motion and upon such terms as are Just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) . . . excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."
 RULE 60(b)(1)
Turning now to defendant's first ground for relief "excusable neglect." Essentially defendant argues that its counsel's drinking (and the medical condition that it represents) provides grounds for relief here. Suffice it to say that such evidence as was provided by way of affidavit of Alan Gordon, M.D. was recanted by Dr. Gordon at the time that he was deposed. The hospital records from Butler Hospital admitted in evidence are not convincing or probative to this Court due to the fact that the supplier of the information was not, in the opinion of this Court, a reliable source. Accordingly, while noting a number of cases where existing medical conditions or treatment have been shown to be the reason for a party's failure to comply with procedural time limits and have been held to fall within the rubric of "excusable neglect" such is not the case before the Court. One need only review the sophistication, breadth and scope of the numerous legal matters being dealt with throughout the relevant time frame by Coffey for or through defendant on a daily basis and in a reasonably appropriate manner to conclude, as does this Court, that defendant has failed to show a causal connection between Coffey's drinking habits and the failure to properly handle (and indeed the neglect incident to his handling of) this matter. Accordingly, this Court finds that rather than excusable neglect, Coffey's failure to respond to the discovery demand, followed by his continued failures which ultimately resulted in the judgment here sought to be set aside, resulted either from unexplained or willful neglect of his responsibilities. As our Supreme Court wrote in The Astors'Beechwood v. People Coal Company, Inc., 659 A.2d 1109, 1115 (RI 1995):
 "It is well settled that unexplained neglect, whether by a party or its counsel, standing alone, will not automatically excuse noncompliance with orderly procedural requirements. (citations omitted) Relief from a counsel's failure to comply with procedural requirements will not be granted unless it is first factually established that his neglect was occasioned by some extenuating circumstance of sufficient significance to render it excusable."
Going on, our Court wrote:
 "Excusable neglect that would qualify for relief from judgment is generally that course of conduct that a reasonably prudent person would take under similar circumstances.
Clearly, no reasonable counsel would have ignored the request for production and motions and letters and orders and hearings which here culminated in the judgment at hand. Defendant here argues also, as did counsel in Astors' Beechwood that plaintiff has not been prejudiced. Our Supreme Court there made clear that the scope of the inquiry in determining excusable neglect is limited to why the deadline (here deadlines) were missed, not as to what prejudice there is to the other party.
 RULE 60(b)(6)
Defendant also urges upon the Court that it is entitled to relief pursuant to the provisions of Rule 60(b)(6). It argues that "such relief is appropriate when the circumstances to which the default judgment was entered, if permitted to stand, would work a manifest injustice." Greco v. Safeco Insurance Co. ofAmerica, 107 RI 195, 198 (1970). What then are the circumstances here which would lead to the implication of that rule? Clearly, as argued by plaintiffs, to give meaning to the specific grounds for relief set out in 60(b)(1) through (5), grounds justifying the successful invocation of 60(b)(6) must be mutually exclusive. (See, Moore Federal Practice, Sections 60.48[1]-[2] at 60 through 167, 11 Wright, Miller and Kane Federal practice and Procedure § 2864 at 362. Also see, Greco v. Safeco, supra at 197.) This Court finds as urged by defendant that Coffey's action, or rather lack of action, was inexplicable. This finding, together with the facts, as found, supra, that Coffey during the times here significant, served as general counsel to defendant; performed highly sophisticated work for defendant; was physically headquartered at defendant's premises, all reinforce the general rule that defendant, having selected its counsel, is accountable for his acts, actions and mistakes. King v. Brown, 235 A.2d 847, 875 (RI 1967). Defendant has failed to establish any circumstance leading to the default judgment herein which would serve, in the opinion of this Court, to work a manifest injustice to defendant. Coffey, of course, may be accountable to defendant for negligence and/or breach of contract. Coffey was very much involved in issues with respect to professional liability while representing defendant. It is in that arena that defendant here should seek relief because within the perimeters of Rule 60(b) which, in appropriate circumstances, absolves a party from the acts of its chosen attorney, defendant has the burden of establishing its right to relief, and here defendant has failed to carry that burden.
Plaintiffs' counsel shall submit an order consistent with the provision hereof.
[1] No answer to an amended complaint filed in July 1996 is found on behalf of Maguire.